IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| **DENEIA M. THOMAS,** | § | **CIVIL ACTION NO.: 4:24-cv-4537** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| | § | |
| **THE BOARD OF REGENTS of TEXAS** | § | **JURY TRIAL DEMANDED** |
| **SOUTHERN UNIVERSITY, a government** | § | |
| **entity,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff DENEIA M. THOMAS ("Plaintiff") brings this action against Defendants THE BOARD OF REGENTS OF TEXAS SOUTHERN UNIVERSITY, to address denial of procedural and substantive due process and dismissal from her tenured position without cause, in violation of the Due Process Clause and the Privileges and Immunities Clause of the Fourteenth Amendment, made applicable through 42 U.S.C. § 1983, and gender discrimination under Title XII of the Civil Rights Act of 1984.

## II.
## JURISDICTION AND VENUE

1. The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C §12133. The Court may grant declaratory relief pursuant to 29 U.S.C. §§ 2201 and 2202.

2. The jurisdiction of this Court is invoked pursuant to the Fourteenth Amendment of the United States Constitution, and the subsequent remedial legislation enacted pursuant thereto, as codified at 42 U.S.C. § 1983.

3. Venue is appropriate in the United States District Court for the Southern District of Texas because the events that gave rise to this cause of action occurred in Harris County, Texas.

## II.
## PARTIES

4. Plaintiff is a resident of Cole County, Missouri.

5. Defendant Texas Southern University Board of Regents is a Texas public university, commonly referred to as Texas Southern University (hereinafter "TSU," "Board of Regents" and/or the "University"). According to the Bylaws of the Texas Southern University Board of Regents, Texas law designates Texas Southern University as a coeducational institution of higher education and gives the Board of Regents the power and authority to govern the University. The Board of Regents is expressly directed by state law to enact bylaws, rules, and regulations, for the successful management and government of the institution and may be served with process to James W. Crawford III, President of Texas Southern University. at the following address: Texas Southern University, 3100 Cleburne Street, Hannah Hall, Suite 200, Houston, Texas 77004.

6. According to Section 1.2(b) of the Bylaws of the Texas Southern University Board of Regents, "the Board shall provide the policy direction for the institution including adopting or approving policies required by law […] and ensure that the policies and processes of the University remain current and are properly implemented."

7. According to Section 1.2(d) of the Bylaws of the Texas Southern University Board of Regents, each member of the Board has the legal responsibilities of a fiduciary and is responsible for ensuring "that they act, in the performance of their duties, in compliance with the constitution and state and federal laws[.]"

8. According to Section 7.1 of the Bylaws of the Texas Southern University Board of Regents, the Board "shall appoint" the President, "who shall be the Chief Executive Officer of the University, and who shall hold office at the pleasure of the Board." "The President

is responsible to the Board of Regents for the administration and for the management and control of the entire University, in accordance with Board Policy and direction."

9. At all times relevant to the actions described in this Complaint the Defendant, its agents, assigns and Board members, were acting under color of law.

## III.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff has exhausted her administrative remedies with the Equal Employment Opportunity Commission by filing a Charge No. 460-2023-07221 and obtaining referral to the Department of Justice on August 20, 2024, attached hereto as **Exhibit A.**

11. Upon receipt of the Right to Sue letter from the Department of Labor, Plaintiff will amend her pleadings to include the notice.

## IV.
## FACTUAL BACKGROUND

12. Plaintiff has over 30 years of experience as a tenured Professor of Psychology.

13. Plaintiff was hired by Defendant in October 2021 as the Vice President of Enrollment and Student Success and a full Professor of Psychology with tenure.

14. Plaintiff's salary with Defendant was $230,000 annually.

15. For the duration of Plaintiff's employment, she was met with overwhelming verbal and emotional hostility, bullying, collusion and harassment by Defendant Board Members and subordinate employees of international descent, all agents and employees of Defendant.

16. Plaintiff lodged and documented complaints about residential life impropriety she witnessed by particular subordinate staff.

17. In early 2023, Defendant's agent and employee, STEPHANIE D. NELLONS-PAIGE's disparate treatment of Plaintiff escalated.

18. In April and June of 2023, Defendant's agent and employee, RICHARD JOHNSON began to target Plaintiff with harassing and hostile treatment.

19. In both April and June of 2023 at the Board of Governor's meetings, Plaintiff was verbally lacerated with false allegations in strict violation of Public Meetings Board Policy by Board Members and Defendants JAMES M. BENHAM, STEPHANIE D. NELLONS-PAIGE, and RICHARD JOHNSON.

20. Plaintiff reported the above on multiple occasions to Human Resources ("HR") via email.

21. In turn, Plaintiff wrote a letter to the Board detailing both its disparagement and habitual violations of Board and Institutional Policy in June 15, 2023.

22. A day later, on June 16, 2023, Plaintiff received a telephone call from Defendant's HR Department, Ms. Cynthia Buckley, stating that Defendant abruptly "terminated your role". Plaintiff's access to her email or work evaporated.

23. Plaintiff informed Ms. Buckley that this was an error, as with tenure, Plaintiff would transition to a faculty role.

24. At 11:59 p.m. on June 16, 2023, Plaintiff received a termination notice via email from Dakota Doman, acting CEO of Defendant at that time.

25. Plaintiff was not afforded her due process rights with notice of her termination or a Board vote. She was swiftly terminated, thereby truncated from exercising her due process rights.

26. Plaintiff was treated differently than other similarly situated male administrators with faculty status whose roles where "eliminated". The similarly situated males were afforded negotiation and transition into their professorship roles without interruption, unlike Plaintiff.

27. Plaintiff, however, was stripped of her regular pay and benefits.

28. Plaintiff was "offered" to transition to a tenured professorship at less than 35% of her administrative salary, unlike her male counterparts whom were offered 75%.

29. Like Plaintiff, *at least five* male professors were all previous administrators whom transferred over to full-time tenured professors, within the last three years. Plaintiff is "similarly situated", in that her pay as a full-time professor was not calculated the same as her male counterparts. She did not hold the same years of service at TSU or years of professorship.

30. Defendant retorted to Plaintiff that she was "the highest paid professor in her department" but offered Plaintiff, a female, the minimum salary range of $76,138.00.

31. At the same time, Defendant paid *at least five* full-time professor salaries were all calculated at a rate of 75%-85% of their administrator positions and *exceeded* maximum salary per HR's Salary Schedule for Faculty for their analogous job titles. As follows, Plaintiff was also transitioning from administrator to full-time professor, her salary should have been $172,500 to $195,000 (75%-85% of her administrator salary of $230,000). However, Plaintiff, a female, was offered the lowest range salary for her department at $76,138.00- less than 35% of her administrator salary.

32. Furthermore, there is nothing in TSU's Tenure and Promotion guidelines in the Faculty Handbook that mentions years of service at TSU as a criterion to determine pay. Instead, it is based on recommended and approve rank (professor) and status (tenure) based on teaching, scholarship, and service. Under that criterion, Plaintiff's offered salary should not have been the minimum range.

33. Plaintiff declined to accept the professor position, thus refrained from entering into a new

contract. Defendant then punished Plaintiff by reneging her agreed salary for the months of June, July and August- until her departure,

34. Plaintiff continued to work on a grant wherein she served as the Principal Investigator.

35. Defendant exculpated Plaintiff entirely, dismissing her tenure and rank.

36. Plaintiff, a tenured professor, was not afforded a hearing or Board vote in her termination.

37. Plaintiff was forced to find another position, as Defendant tarnished her reputation and refused to negotiate a fair salary for equal pay after dissolving her position.

38. Plaintiff suffered damages as a result, including emotional distress, relocation expenses and attorney's fees.

## V.
## CAUSES OF ACTION

**Count 1: Gender Discrimination**

39. Plaintiff repeats and realleges each and every allegation of the above paragraphs, as if set forth fully herein.

40. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination in employment on of race, color, disability, religion, sex, national origin, or age.

41. Here, Defendant treated Plaintiff, a female, in such a manner that adversely affected her employment, in violation of Title VII of the Civil Rights Act of 1964.

42. Defendant intentionally targeted Plaintiff on the basis of her gender.

43. Defendant treated Plaintiff, a female, in a disparate manner compared to males in that Plaintiff was subject to yelling, screaming, and false statements attacking her character at two Board meetings in May and June of 2023, respectively. Males were not subjected to such treatment.

44. Defendant also treated Plaintiff in a disparate manner in that Plaintiff was denied equal pay to her male counterparts. Similarly situated male counterparts that transitioned from administrative to faculty roles.

45. Defendant's disparate treatment on the basis of gender is in how Defendant calculated tenured professor's salaries. At least five similarly situated, full-time male professor salaries were all calculated at a rate of 75%-85% of their administrator positions at or around the same time frame. However, Plaintiff, a female, was also transitioning from administrator to full-time professor, was offered the lowest range salary for her department at $76,138.00- less than 35% of her administrator salary.

46. Defendant treated Plaintiff in a disparate manner on the basis of gender, thus unlawfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

47. Therefore, Defendant is liable to Plaintiff for damages within the jurisdictional limits of this Court.

**Count 2: 42 U.S.C. §1983 - Violation of Plaintiff's Right to Procedural and Substantive Due Process Under the Fourteenth Amendment Due Process Clause and Privileges and Immunities Clause.**

48. Plaintiff repeats and realleges each and every allegation of the above paragraphs, as if set forth fully herein.

49. Plaintiff possessed a property interest in her membership in TSU's tenured faculty, which she was deprived of when Defendants wrongfully terminated her and stripped her of tenure without cause.

50. Plaintiff was entitled, under state law and TSU's procedures and policies enacted pursuant to state law, to a due process hearing and opportunity to challenge the termination.

51. Defendants denied Plaintiff due process, including any hearing or opportunity to challenge

52. the termination. Plaintiff deprived Thomas of a property interest and a liberty interest in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

52. Plaintiff was entitled, under state law and TSU's procedures and policies enacted pursuant to state law, to continue in her tenured position unless good cause existed for her removal.

53. Defendants terminated Plaintiff and stripped her of her tenure rights without good cause.

54. Defendants' decision to terminate Plaintiff and strip her of tenure was arbitrary and capricious, in effect depriving her of a property interest and liberty interest in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

55. All discriminatory acts alleged against Defendants were taken under color of the laws and regulations of the State of Texas.

56. As a direct result of the denial of due process procedures and/or the arbitrary and capricious decision to terminate Plaintiff and strip her of tenure, Thomas has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm to her career, her professional reputation, and her standing in the academic community.

### Count 3: Breach Of Contract

57. Plaintiff repeats and realleges each and every allegation of the above paragraphs, as if set forth fully herein.

58. Defendants tendered an offer of employment at TSU, in the position of Vice President of Enrollment and Student Success and a full Professor of Psychology with tenure, subject to the provisions of the regulations governing TSU and its rules, regulations, and procedures,

which include TSU's Faculty Manual.

59. Plaintiff accepted the offer.

60. Under TSU's procedures and policies enacted regarding tenure at TSU, Plaintiff was entitled to a due process hearing and opportunity to challenge the termination.

61. Under TSU's procedures and policies enacted regarding tenure at TSU, Plaintiff was entitled to continue in her tenured position unless good cause existed for her removal.

62. Defendants breached their contract with Plaintiff by denying her a hearing and opportunity to challenge the termination decision, and by terminating Plaintiff without good cause.

63. As a direct result of the discrimination, Plaintiff has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm to her career, her professional reputation, and her standing in the academic community.

**Count 4: First Amendment Retaliation**

64. Plaintiff repeats and realleges each and every allegation of the above paragraphs, as if set forth fully herein.

65. Plaintiff reported matters of public concern, including matters which potentially impact the University's ability to remain accredited, including the President of TSU.

66. Plaintiff was terminated and her tenure revoked because of her protected speech regarding matters of public concern.

67. As a direct result of the retaliation, Plaintiff has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm

to her career, her professional reputation, and her standing in the academic community.

**Count 5: Wrongful Termination- Retaliation**

68. Plaintiff repeats and realleges each and every allegation of the above paragraphs, as if set forth fully herein.

69. Wrongful termination is defined as terminating "at will" employment for an illegal reason. Retaliation is an illegal reason for terminating employment.

70. Retaliation by an employer, labor union, or employment agency constitutes an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person if the employee: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

71. Plaintiff was retaliated against by making a written complaint to Defendant's Board detailing it's violations of Board and Institutional Policy in June 15, 2023.

72. The very next day, on June 16, 2023, Plaintiff was terminated without cause or due process for her complaints.

73. Defendant's immediate termination of Plaintiff was a direct and proximate result of her complaints of wrongdoing.

74. Plaintiff was terminated for an illegal reason, in retaliation for her complaints.

75. Thus, Plaintiff is entitled to damages within the jurisdictional limits of this Court.

## VI.
## JURY TRIAL DEMAND

76. Plaintiff requests a jury trial on all questions of fact raised in this Complaint.

## VII.
## ATTORNEYS' FEES

72 Defendant's actions and conduct as described herein and the resulting harm and threatened harm to Plaintiff have required Plaintiff to retain the services of counsel. Plaintiff seeks recovery of reasonable and necessary attorney's fees as is allowed under Section 1983 and 42 U.S.C. § 1988, as well as under state law on her breach of contract claim.

## VII.
## PRAYER

WHEREFORE, Plaintiff DENEIA M. THOMAS respectfully asks that the Defendant be cited to appear and answer, and that on final trial, Plaintiff be awarded a judgment against Defendant for the following:

    a. Actual and consequential damages

    b. Compensatory and non-compensatory damages;

    c. Front and back pay;

    d. Punitive damages;

    e. Attorney's fees and costs;

    f. Pre-judgment and post-judgment interest allowed by law;

    g. Past and future non-pecuniary damages, including emotional pain, suffering, mental anguish, damage to reputation and other non-pecuniary damages as a result of Defendant's unlawful employment practices described above, in amounts to be proven at trial;

    h. Costs of court;

    i. Such other further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

**ROGER G. JAIN & ASSOCIATES, P.C.**

_____
Blair C. Maslowski
Texas Bar No. 24123268
S.D. Tex. Bar No.: 3669071
9301 Southwest Freeway, Suite 250
Houston, Texas 77074
Tel.: (713) 981-0600
Fax: (888) 200-6848
info@rogergjain.com
**ATTORNEY FOR PLAINTIFF**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

Dr. DeNeia Thomas
8110 Wild Wood Dr. Apt. 520
Jefferson City, MO 65109

Re:   Dr. DeNeia Thomas v. TEXAS SOUTHERN UNIVERSITY
      EEOC Charge Number: 460-2023-07221

Dear Deneia Thomas:

The U.S. Equal Employment Opportunity Commission has received your request for a Notice of Right to Sue in the above referenced charge.

Your request has been forwarded to the U.S. Department of Justice (DOJ) for action. That Agency will act on your request and issue the Notice directly to you.

If you have any questions, please call this office at (346) 327-7700.

On Behalf of the Commission:

Digitally Signed By: Rayford O. Irvin
08/20/2024

Rayford O. Irvin
District Director

cc:  Blair Maslowski
     Attorney at Law
     Roger G. Jain & Associates, P.C.
     9301 Southwest Freeway, Suite 250
     Houston, Texas   77074